**Erskin Lavernon Thover ALLEN, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–81–0271–CR.**

Court of Appeals of Texas, Amarillo.

April 1, 1983.

Stephen E. Boatwright, Floyd D. Holder, Jr., Lubbock, for appellant.

John T. Montford, Dist. Atty., Jim B. Darnell, Asst. Dist. Atty., Lubbock, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

BOYD, Justice.

Appellant Erskine LaVernon Allen, Jr. brings this appeal from his conviction for aggravated rape and the consequent jury assessed punishment of ninety-nine years confinement in the Texas Department of Corrections. Appellant, through counsel, raises two grounds of alleged error; and, pro se raises six additional grounds. For reasons hereinafter expressed we affirm the judgment of conviction.

A brief resume of the State's evidence, accepted by the jury, shows the following events. The complaining witness was awakened on November 23, 1980 by someone knocking upon her door. Upon answering the door she saw the appellant whom she recognized as being the same man that, as an employee of the United Parcel Service, had delivered a package to her a few days earlier. Appellant forced his way into the complaining witness' garage apartment. While in the apartment he pulled a gun from his pocket. Using the pistol in a threatening manner, appellant forced the complaining witness to disrobe and then to perform oral sex upon him. Afterwards he ordered her to lie on her bed where he forced her to have sexual intercourse with him. Appellant then asked the witness if she had any money or valuables and, by threat, took fifty dollars from her. Appellant then ordered the witness into her bathroom and placed a chair under the exterior door handle of the bathroom to secure it. After three or four minutes, the witness opened the bathroom door to find appellant gone. She then, in due course made outcry as a result of which the appellant was arrested and this prosecution ensued.

In appellant's first ground he complains of the exclusion by the trial court of the testimony of a psychologist tendered by him. The testimony of the psychologist was tendered by appellant, using his language, to establish "a defensive theory of fabrication based on fantasy arising out of a crisis in the complaining witness' personal life." In support of his position, he points out that appellant's primary theory of defense is that no rape had occurred and that the complaining witness' testimony was the result of fantasy and fabrication. Since the State's case rested almost exclusively upon the testimony of the complaining witness, her emotional stability, motives for fabrication, and possible bias or prejudice toward the black race in general, and appellant in

particular, were material factors critical to this defensive theory. He argues that the testimony of the psychologist explaining and establishing a recognized psychological phenomenon, i.e., the "suffering victim fantasy", should have been admitted in order that the defense might link various and seemingly insignificant facts developed upon cross-examination of the complaining witness into a credible theory, based upon established medical knowledge, which the jury could consider and evaluate in assessing the complaining witness' credibility and the weight to be given her testimony. In support of his position he cites the various authorities establishing the rule, as stated in *Simmons v. State,* 548 S.W.2d 386, 388 (Tex.Cr.App.1977), that "great latitude is allowed the accused in showing any fact, including pending charges, which would tend to establish ill feeling, bias, motive, and animus on the part of any witness testifying against him."

In his argument under this ground appellant specifically points out that the psychologist was not tendered by him as a factual witness. He acknowledges that Dr. Davis, the psychologist in question, had not examined the complaining witness and, in the tendered testimony, stated that, even had he conducted an initial evaluation, he would be unable to determine whether the reported rape was real or imagined. Therefore, if we accepted appellant's position, the effect of our holding would be that the psychologist should have been allowed to testify as to the existence of an abstract psychological theory with no demonstrated relevance to the case in trial other than the fact that such a theory existed and that such theory could conceivably be of benefit to the jury in its classic function of assessing the credibility of the witness testimony in question. This we cannot do.

In *Hopkins v. State,* 480 S.W.2d 212 (Tex. Cr.App.1972), the court rejected a similar contention. The testimony tendered in *Hopkins* was that of a psychiatrist who would testify that the State's principal witness in that case was subject to a character disorder that might prompt him to distort facts. Indeed, the proffered testimony in *Hopkins* was more relevant than that tendered here since that psychiatrist had actually examined the witness in question. While the tendered witness in this case was a psychologist rather than a psychiatrist, the fields of expertise in question are so closely related as to make the reasoning of the court in *Hopkins* closely analogous. In this case, as in *Hopkins,* Dr. Davis' field of expertise is more of an art than a science and one in which there is a great deal of divergence of opinion among eminently qualified and learned men in that field. We believe that receipt of testimony such as that tendered in this case for the profferred purpose would be a gratuitous flight into the field of the esoteric with little benefit to be gained by the jury. In the words of the court in *Hopkins,* receipt of testimony such as this would mean that "the jury will quite likely be witness to a 'battle of experts' who are called, in reality, not for the general knowledge which they can bestow upon the court, but for the partisan benefit which the parties who called the witness hope to receive." See also *James v. State,* 546 S.W.2d 306 (Tex.Cr. App.1977); and *Harris v. State,* 638 S.W.2d 914 (Tex.App.—Houston [1st Dist.] 1982, pet'n desc'y rev. ref.). Appellant's first ground of error is overruled.

In ground two appellant urges that the trial court erred by "refusing to allow appellant to discover evidence which may have tended to be exculpatory." The thrust of appellant's argument under this ground is directed at the action of the trial court in overruling appellant's motion made during trial, to compel the complaining witness to submit to a medical examination for the purpose of obtaining blood type information and for a recess to allow testing of seminal fluid samples.

A brief statement of the sequence of events leading to the motion in question is necessary for a proper discussion of this ground. The record reveals that the State did not list at pretrial hearing on appellant's motion for discovery, two witnesses which it later called at trial. One of these witnesses was called for the purpose of

establishing a chain of custody of certain "rape specimens," i.e. vaginal washings, taken from the complaining witness after the rape. The chain of custody of these specimens was later stipulated to and this witness never testified. The second witness was a Dr. Cook who performed some tests on the specimens.

Appellant objected to the testimony of Dr. Cook on the basis that the witness had not been listed as a State's witness and no copy of the witness' report had been furnished. In response to the objection the prosecutor stated that had he known he had Cook's report and had he known appellant's counsel did not have a copy of the report, he would have furnished it. The prosecutor also stated that counsel for appellant knew the State would call "Burgess Cook because he knew Burgess Cook was involved in this." After obtaining the admission from appellant's counsel that he had talked to Cook and knew what the report contained, the objection to Cook's testimony was overruled.

Dr. Cook testified that his testing revealed both spermatozoa and seminal fluid in the specimens. He also testified that no tests were performed on the samples to determine blood types which may have been represented by the seminal matter. He testified that he could run the tests in "probably a day." However, he testified that, "I don't know of any water soluable (sic) blood group substance that would have survived this length of time." He also testified "I—at this late date, I don't know—I don't know what value negative findings would be." At this juncture, appellant filed the motion in question with the agreement that he would also submit to such an examination. The motion was overruled by the court with the observation that the parties had had notice for some time of the trial and "to start having tests during the trial is a matter of theatrics, and this court does not intend to participate in theatrics."

Appellant contends that blood analysis tests of the seminal fluid might have revealed they were deposited by a person having a different blood type than that belonging to him. Accordingly, he reasons, the combination of the admission of Dr. Cook's testimony, when he had not been listed as a witness and no copy of his report furnished appellant, and, after receipt of the testimony, the refusal of appellant's motion for additional testing resulted in a denial to him of an opportunity for effective confrontation of witnesses as well as the opportunity to obtain exculpatory testimony.

Disposition of this ground of error requires the decision of two questions: first, whether the sequence of events involving the testimony of Dr. Cook amounted to the suppression or non-disclosure by the State of testimony which may have had an effect upon the outcome of the trial; and, second, whether the refusal of the appellant's motion for further examination and testing at the time of the motion amounted to a deprivation of the right of appellant to effective confrontation of witnesses and to obtain exculpatory testimony.

It is true that reversible error is presented if a prosecutor actively suppresses or negligently or inadvertently fails to disclose evidence which may exonerate the accused or which may be of material importance to the defense. *Means v. State,* 429 S.W.2d 490, 494 (Tex.Cr.App.1968). The standard applied in such cases has been whether the testimony "may have had an effect on the outcome of the trial" with a focus upon the "essential fairness" of the procedure. *Means,* supra; *Crutcher v. State,* 481 S.W.2d 113 (Tex.Cr.App.1972); *Ridyolph v. State,* 503 S.W.2d 276 (Tex.Cr. App.1973). Therefore, if appellant's counsel actually knew the facts which were withheld, appellant cannot now seek relief on the basis of the State's failure to disclose the same facts. *Means,* supra at p. 496. Perusal of the record reveals the following dialogue between the trial court and appellant's counsel at the time of the tender of Dr. Cook's testimony and the disposition of appellant's objection thereto:

The Court: Well, if you have talked to Burgess Cook, you know what his report contains, do you not?

[Appellant's Counsel]: Yes sir ...

We think the record supports the conclusion of the trial court that appellant was aware of Dr. Cook's testimony and the contents of his report. Therefore, even assuming, arguendo, that the State negligently or inadvertently failed to disclose that Dr. Cook would be called to testify and failed to furnish a copy of the report, under the circumstances of this case no reversible error is presented by the admission of his testimony.

■ We think the decision as to whether to grant or deny appellant's motion in question here was one addressed to the sound discretion of the trial court. In view of the length of the time this case has been pending, the testimony as to the lack of conclusiveness of the suggested tests and the other surrounding circumstances of the case, we cannot find the denial of the motion represented an abuse of the trial court's discretion. See *Williams v. State*, 481 S.W.2d 119, 123 (Tex.Cr.App.1972).

■ We do not believe that the combination of the two factors, i.e. the admission of the testimony in question and the refusal of the motion, resulted in the denial to appellant of an essentially fair trial. Appellant's ground of error two is overruled.

■ In the first of the six additional grounds of error presented by appellant in his pro se brief, which grounds we enumerate as grounds three through eight, he asserts that in the selection of the trial jury blacks were systematically excluded thereby depriving appellant of his constitutional right to a "public trial by an impartial jury." This is a contention never raised during trial and it is now made for the first time on appeal. It is, of course, axiomatic that it is presumed that the trial jury was properly impaneled, and that the law was followed in the selection of the jury and the burden of proof is upon appellant to establish racial discrimination. Tex.Code Crim. Pro.Ann. art. 44.24; *Johnson v. State*, 90 Tex.Cr.R. 229, 234 S.W. 891 (1921). Moreover, we have carefully examined the record on this appeal including the voir dire examination of the jury panel and find nothing indicating any such vice as that asserted by appellant. This ground of error which we have denominated as ground three is overruled.

In his next two grounds, which we shall denominate as grounds four and five, appellant asserts the insufficiency of the evidence to support the jury's verdict of aggravated rape. The offense of rape is committed under Tex.Penal Code Ann. § 21.02 when:

(a) A person ... has sexual intercourse with a female not his wife without the female's consent.

(b) The intercourse is without the female's consent under one or more of the following circumstances:

(1) he compels her to submit or participate by force that overcomes such earnest resistance as might reasonably be expected under the circumstances.

(2) he compels her to submit or participate by any threat, communicated by actions, words, or deeds, that would prevent resistance by a woman of ordinary resolution, under the same or similar circumstances, because of a reasonable fear of harm.

Aggravated rape was defined under Tex. Penal Code Ann. § 21.03(a)(2) at the time the instant case arose as:

(a) A person commits an offense if he commits rape as defined in Section 21.02 of this code or rape of a child as defined in Section 21.09 of this code and he:

(2) compels submission to the rape by threat of death, serious bodily injury or kidnapping to be imminently inflicted upon anyone.

■ When the sufficiency of the evidence is challenged, this court is required to view the evidence in the light most favorable to the verdict. *Resendez v. State*, 495 S.W.2d 934 (Tex.Cr.App.1973). The jury is the sole judge of the credibility of the witnesses and may accept or reject any part or all of the testimony given by State or defense witnesses. *Johnson v. State*, 571 S.W.2d 170, 173 (Tex.Cr.App.1978). The complaining witness' identification of appel-

lant as her assailant was definite and unshaken after extensive and able cross-examination. Her statement about the act of intercourse and penetration by the appellant was also clear and definite as was the testimony about the use of a gun in the commission of the offense. We find the evidence sufficient, when accepted by the jury, as it was, to justify their verdict. See: *Brown v. State,* 576 S.W.2d 820 (Tex. Cr.App.1978); *Miller v. State,* 629 S.W.2d 843 (Tex.Cr.App.1982). Grounds four and five are overruled.

■ In his next ground appellant asserts error when the trial court "failed to instruct the jury on the technical definition of intercourse due to the cause, penetration." Appellant concedes there was no objection made at trial and that, in the absence of such objection, only fundamental error requires reversal. Fundamental error is an error "calculated to injure the rights of the appellant to the extent that he has not had a fair and impartial trial." *Smith v. State,* 513 S.W.2d 823, 829 (Tex.Cr.App. 1974). The trial judge defined sexual intercourse to mean "any penetration of the female sex organ by the male sex organ." This language tracked the definition of sexual intercourse set forth in Tex.Penal Code Ann. § 21.01(3). No error is shown. *Hanner v. State,* 572 S.W.2d 702 (Tex.Cr.App. 1978). Ground of error six is overruled.

In his next ground of error appellant alleges error in "permitting testimony of State's witness in character of appellant after motion to limer (sic) had been presented and granted." The gist of appellant's complaint is that after a motion in limine to prevent any reference to a purported extraneous offense which occurred on April 13, 1979 was granted, the State's witness J.R. Ashmore was allowed to testify, at the punishment hearing, as to the bad character of appellant.

■ Initially, we note that no objection to this testimony was made at trial. The failure to object at trial would waive the error, if any. *Esquivel v. State,* 595 S.W.2d 516 (Tex.Cr.App.1980). Moreover, Tex.Code Crim.Pro.Ann. art. 37.07 § 3(a)

specifically provides that, at the punishment hearing, either the State or the defendant may produce testimony as to the general reputation of the defendant. We have examined the record of Mr. Ashmore's reputation testimony and conclude that it was produced in correct form. *Ellis v. State,* 543 S.W.2d 135 (Tex.Cr.App.1976); *McWherter v. State,* 624 S.W.2d 712 (Tex. App.—Houston [14th Dist.] 1981, no pet.). Ground of error seven is overruled.

■ In his last ground of error, appellant asserts error in "the Judgment and Sentencing by not being in agreement with the First Count of the indictment in which Appellant was charged and convicted." The thrust of appellant's argument under this ground is directed at the court's finding that a deadly weapon was used in the commission of the offense when there was no ballistics report or weapon actually received into evidence. For the reasons and authorities set out in our discussion under grounds four and five we think the State's evidence, when accepted by the jury, was sufficient to establish the commission of the offense by appellant using a deadly weapon, i.e. a pistol, in a threatening manner. Ground of error eight is overruled.

There being no reversible error, the judgment of conviction is affirmed.