Richard **PEREZ, Appellant,**

v.

**STATE of Texas, Appellee.**

No. 13–81–072–CR.

Court of Appeals of Texas, Corpus Christi.

April 28, 1983.

Rehearing Denied May 19, 1983.

Discretionary Review Refused Sept. 21, 1983.

Arnold X. Medina, Garza & Medina, Corpus Christi, for appellant.

Grant Jones, Dist. Atty., Corpus Christi, for appellee.

Before NYE, C.J., and UTTER and GONZALEZ, JJ.

## OPINION

GONZALEZ, Justice.

This is an appeal from a conviction for rape. Appellant was convicted by a jury and the court assessed punishment. Appellant challenges the sufficiency of the evidence and alleges error in the admission of certain evidence. We affirm.

Viewing the evidence in the light most favorable to the verdict, the record reflects that on January 21, 1979, at approximately 5:00 p.m., as the prosecutrix left her place of employment, the Dairy Queen in Port Aransas, Texas, she was approached by two men. One of them, *Rosendo Lopez,* grabbed her by the arm, pulled out a knife and pointed it at her chest. When Lopez threatened to stab her if she did anything wrong, the prosecutrix responded that she would do anything Lopez wanted if he would not hurt her. After walking a short distance, the prosecutrix was forced into a car and Lopez got into the car in which appellant, Richard Perez, one of three passengers.

She was taken to the beach where Lopez pushed her toward a sand dune and told her that he would stab her if she did anything wrong. The prosecutrix testified that she could see the knife when Lopez told her to take her clothes off. Lopez had intercourse with her as his three friends watched from the top of the dunes. The prosecutrix testified that she did not resist because she was in fear of her life.

Appellant then had intercourse with the prosecutrix. Appellant did not verbally threaten her and she did not resist appellant. She testified that the reason she did not offer any resistance was because Lopez, the man with the knife, was present. Lopez then called the driver of the car, Roger Olivares, who told her he also had a knife but he did not have intercourse with her. Jessie Hernandez then had sexual intercourse with the prosecutrix in the presence of Lopez who then left. Lopez returned and again had intercourse with the prosecutrix.

They returned to Port Aransas, and on their way back, the prosecutrix told them that she needed to use the restroom. They stopped and Lopez exited the car with the prosecutrix to a nearby field. At that time, the car began to pull away and Lopez ran to the car. The prosecutrix also ran and was

subsequently picked up by some friends and taken to the police station.

The prosecutrix further testified that prior to January 21, 1979, she had attended a rape seminar and that she had reacted to the individuals in the manner that she did, because of what she had learned at the seminar.

The State's next witnesses were Jeffrey Scott Placke and Teresa Jane Wilson. These witnesses testified that on January 21, 1979, they observed the prosecutrix walking along the street crying. They testified that the prosecutrix told them that she had been raped by four Mexican males. Wilson and Placke took the prosecutrix to the police station to report the incident and gave a description which the prosecutrix had given them, of the automobile and its occupants to the police dispatcher.

The State's next witness was Dr. Fred D. Warren, a physician who testified that he examined the prosecutrix the evening of January 21, 1979 in the emergency room at the hospital and based on his examination, the prosecutrix had had sexual intercourse within the last six hours.

The State's next witness was Officer Charles Titus who testified that at approximately 8:30 p.m. on January 21, 1979, he arrested four individuals inclusive of appellant. He also testified that he found a knife on co-defendant Rosendo Lopez, which was offered into evidence as State's exhibit one and admitted over appellant's objection.

The State's next witness was *Rosendo Lopez,* appellant's co-defendant. He testified that he and three other men including appellant had bought two cases of beer and were "cruising" in Port Aransas when they saw the prosecutrix at the Dairy Queen. They made a plan to pick up the prosecutrix *and appellant gave Lopez a knife to use.* Lopez testified that he pulled the knife on the prosecutrix and placed it under her sweater and made her get into the car with his other friends. When he held the knife

up to the prosecutrix she agreed that she would do anything he wanted her to do but for him not to hurt her. The prosecutrix appeared scared and appeared to be making friends with them so they would not hurt her.

Next, appellant took the stand and denied giving Lopez the knife or that they had planned the assault of the prosecutrix and denied hearing anyone threaten the prosecutrix. According to appellant, Lopez and the prosecutrix walked to the car hugging each other as if they were long time friends, and he never saw a knife. The appellant testified that when they reached the beach Lopez and the prosecutrix went to the sand dunes and after a while he went looking for them and found them in the sand dunes having sexual intercourse. The appellant admitted that he also had intercourse with the prosecutrix but testified that she did not fight or resist in any way.

He testified that they drove to Port Aransas and dropped the prosecutrix off and shortly thereafter were stopped and arrested.

After the appellant had rested his case, the State presented a rebuttal witness. Moirya Heineman testified in rebuttal that she had been employed as a lecturer for the Rape Crisis Center. In that capacity, she had lectured about 25 or 30 times on the method of passive resistance in rape situations. Her experience for the position consisted of several weeks of training with Crisis Intervention Service, and with the director of The Rape Center, in addition to working as a rape counselor who assisted rape victims. Mrs. Heineman testified that passive resistance is going along with the rape and doing nothing to make the man angry in order to avoid being hurt.

■ The main thrust of the appellant's sufficiency of the evidence ground is his contention that the prosecutrix did not resist him and that he never threatened her. In spite of these contentions, however, the prosecutrix testified that the appellant was

one of the men who had intercourse with her without her consent, while the man with the knife was standing by. Furthermore, portions of her testimony were substantially corroborated by Rosendo Lopez, the man with the knife.

In *Esquivel v. State,* 506 S.W.2d 613, 615 (Tex.Cr.App.1974) the court held that:

"The Jury is the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. Art. 36.13 and Art. 38.04, Vernon's Ann.C.C.P. .... The jury may believe some witnesses and refuse to believe others and it may accept portions of the testimony of a witness and reject other portions. The jury here obviously chose to believe the State's testimony."

Appellant argues that there is insufficient evidence introduced proving that he compelled the prosecutrix to submit to sexual intercourse by force and threats. Appellant contends that the only force or threats that were used were by his co-participant, Rosendo Lopez, out of his presence.

The evidence shows that the rape was accomplished by four males. Initially Rosendo Lopez used a knife to threaten the prosecutrix and force her into the car. Later he displayed the knife again at the sand dunes where he raped the prosecutrix and watched as his co-participant had sexual intercourse with her.

"If carnal knowledge of the prosecutrix by any of the appellants, without her consent, was obtained by threats such as might reasonably create a just fear of death or great bodily harm, in view of the relative condition of the parties as to health, strength, and other circumstances of the case, then such appellant and those acting with him as principals were properly charged and convicted of rape by threats as defined in Arts. 1183 and 1185 of the Penal Code." *Longoria v. State,* 155 Tex.Cr.R. 529, 265 S.W.2d 826, 828 (1954).

The evidence is sufficient to support the conviction for rape. Appellant's first ground of error is overruled.

Appellant contends in his second ground of error that the statements made to the prosecutrix by two of his companions before she was forced into the car are inadmissible because they are hearsay; were not part of the res gestae of the offense; were not made in appellant's presence; and were not acts or statements of a conspiracy since the offense had not yet been commenced.

■ In *Ramos v. State,* 419 S.W.2d 359 (Tex.Cr.App.1967) the Court, quoting Wigmore on Evidence, stated:

"When the utterance of certain words constitutes or is part of the details of an act, occurrence or transaction which in itself is relevant and provable, the utterance may be proved as a verbal act, just as may be a visual observation of an event. This is not hearsay evidence; it is not admitted for the purpose of proving the truth of what was said, but for the purpose of describing the relevant details of what took place. One of the several qualifications for admissibility of this type of statement is that 'the words must be contemporaneous with the conduct, or, in the usual phrase, must accompany the act.' Id., § 1776 (Vol. VI, p. 197)."

Therefore, the testimony offered by the State concerning acts and statements of co-defendants was not admitted for the purpose of proving the truth of what was said, but for the purpose of describing the relevant details of what happened at the time the prosecutrix was abducted. Thus, the prosecutrix's testimony was admitted to show the details of a relevant occurrence which was provable, and not admitted for the purpose of proving the truth of what was said.

■ Appellant further contends that these acts and statements should not have been admitted into evidence because all of the statements and acts by his companions to the prosecutrix were not made in his presence. In *Drakes v. State,* 505 S.W.2d 892 (Tex.Cr.App.1974) the Court stated that where all the defendants acted together in

raping the prosecutrix, all of them were conspirators, and thus, previous acts and declarations of each in furtherance of the unlawful enterprise were admissible even if made prior to entry into unlawful enterprise by co-defendants challenging their admissibility.

Here, the appellant's companion, (Lopez), testified that the conspiracy to abduct the prosecutrix began before she was approached outside the Dairy Queen. Therefore, the offense had already begun, and these statements were properly admitted. Appellant's second ground of error is overruled.

Appellant contends in his third ground of error that the trial court erred in admitting opinion testimony concerning preventive techniques in rape situations without the proper predicate. The appellant argues that the State's witness, Moirya Heineman, was not competent and qualified to testify on the subject of rape and that her testimony constituted a legal conclusion to the issue of consent. Appellant cites the case of *Hopkins v. State,* 480 S.W.2d 212 (Tex. Cr.App.1972) and contends that Ms. Heineman did not meet the criteria of an expert witness.

■ In *Hopkins v. State,* supra., the court held that the following criteria must be met before expert opinion testimony can be admissible: (1) He must be competent and qualified to testify. (2) The subject must be one upon which the aid of an expert opinion will be of assistance to the jury. (3) His testimony may not state a legal conclusion.

In the case at bar, the State presented Moirya Heineman as a rebuttal witness to testify on the subject of rape. Heineman began working as a volunteer for Crisis Intervention Service in March, 1977. After extensive training under the director of the Rape Crisis Center, she became a lecturer on the subject of rape. She had given 25 to 30 lectures on the subject of rape and was also a rape counselor who assisted rape victims. Based on this experience, the trial court did not err in ruling that Heineman was qualified to testify.

■ The prosecutrix testified that she had attended two rape seminars and that at those seminars, she learned how to react to different situations and that the things she had learned from a film she had seen at one of the seminars had aided her in this situation. She further testified that she carried on a conversation with the men in order to keep them calm and did not resist because she felt she would be endangering her life.

The fact that the prosecutrix was afraid, while seeming to be friendly, was corroborated by one of the participants Rosendo Lopez. Ms. Heineman's testimony on passive resistance served to explain the conduct of the prosecutrix during her abduction and rape. Thus, the second criterion of *Hopkins* was met in that it was of assistance to the jury in explaining why the prosecutrix did not resist. Appellant's third ground of error is overruled.

■ Appellant in his final ground of error contends that the trial court erred in admitting into evidence video tape recordings of the crime scene without a proper predicate being laid, in that the video tape recordings had been changed and were not in proper sequence. The Court of Criminal Appeals has held that movie pictures being but a succession of photographs are admissible under the same rules that surround the introduction of a still photograph, *Housewright v. State,* 154 Tex.Cr.R. 101, 225 S.W.2d 417 (1950), and has further held that slides, like still photographs and motion pictures, are admissible when they are properly authenticated, relevant to the issue, and not violative of the rules of evidence for the admissibility of photographs. *Cotlar v. State,* 558 S.W.2d 16 (Tex.Cr.App.1977).

In *Williams v. State,* 461 S.W.2d 614 (Tex.Cr.App.1971) the court stated:

"It is common knowledge that the predicate for introduction of a photograph re-

quires proof of (1) its accuracy as a correct representation of the subject at a given time, and (2) its material relevance to a disputed issue. Regarding ordinary photographs, a witness is not required to have seen a photograph made to testify as to its correctness. Although the photographer may authenticate the photograph, his testimony is not mandatory. All that is required of a witness who observed the object or scene depicted with his naked eye is testimony that the photograph truly and accurately represents that object or scene. Like still photographs, motion pictures are admissible in criminal prosecutions where they are properly authenticated, relevant to the issues and not violative of the rules of evidence for the admissibility of photographs." [Citations omitted.]

In the case at bar, the video tape recordings were properly authenticated by Sergeant Hart. Appellant's fourth ground of error is overruled.

The judgment of the trial court is affirmed.