**Ronald Wayne SMITH, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–85–175–CR.**

Court of Appeals of Texas,
Fort Worth.

Sept. 17, 1987.

Gene Grant, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Betty Stanton, Asst. Dist. Atty., Fort Worth, for State.

Before JOE SPURLOCK, II, HILL and KELTNER, JJ.

## OPINION ON MOTION FOR REHEARING

KELTNER, Justice.

Ronald Wayne Smith appeals from his conviction for aggravated sexual abuse of a child pursuant to TEX.PENAL CODE ANN. sec. 22.021 (Vernon Supp.1987). The jury imposed punishment, under enhancement counts to which Smith pled "true," of fifty-seven years in the Texas Department of Corrections. Smith brings five points of error challenging the sufficiency of the evidence, the trial court's suppression of medical evidence, the trial court's suppression

of evidence from a parole officer, and the trial court's instruction to the jury during the guilt/innocence phase of the trial.

We reform the court's judgment, and as reformed, affirm the judgment of the trial court.

This appeal has a long history. Originally, Smith's counsel filed an *Anders* brief in compliance with the case of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *Gainous v. State*, 436 S.W.2d 137 (Tex.Crim.App.1969), certifying the appeal was wholly frivolous and without merit. Thereafter, Smith filed several pro se briefs, in which he raised a number of points of error. This court handed down an opinion and rendered judgment on July 23, 1986, reforming and affirming the judgment of the trial court. Both Smith and his appointed counsel filed motions for rehearing. On October 3, 1986, the motions for rehearing were granted. After requests from Smith and the State for oral argument, the case was reargued.[1] The facts giving rise to this case are in great conflict. The testimony of Smith and the prosecutrix are in direct contradiction on almost every issue. The prosecutrix testified to the following facts.

On the afternoon of August 16, 1984, at about 2:00 p.m., fourteen-year-old S— C— was walking home, one block from a girlfriend's house in North Richland Hills, when a black and red Jeep Cherokee pulled into the driveway next to her. Smith got out of the Jeep, grabbed her arm, stuck a knife in her ribs, and said, "Bitch, if you don't get in the car, you're dead." Smith pushed S— C— into the Jeep and drove her to a wooded area behind the Haltom City Chamber of Commerce, where he raped her. According to the prosecutrix, he did not ejaculate.

During the rape, prosecutrix testified that she saw that the assailant had a tatoo of a duck on his right arm, a tatoo of a woman on his chest, and a long scar near his belly button. After the rape, prosecutrix testified that Smith took her to a location near her home and told her that by the time she got to a phone, he would be on his way to Galveston. Prosecutrix testified that she observed a Texas Dealer license plate on the car with the number P56–094. Instead of proceeding home, she went back to her girlfriend's house where the police were called.

S— C—'s girlfriend also testified at trial. She testified that when S— C— arrived at her house, she was upset and crying and could not talk to the police over the phone. However, police officers arrived at the house, interviewed S— C— and took her to the hospital for rape examination. Smith called the doctor in charge of the rape examination to testify at trial. The doctor testified that he found no semen and observed no bruises, tears, or scratches indicative of force.

Smith admitted that he picked up S— C— in a Jeep Cherokee on the date and at the time described by S— C—. He also admitted driving her to the location she described, but Smith denied any involuntary abduction or sexual activity.

Instead, Smith testified that he was driving around the neighborhood "killing time" before two o'clock. He was in the neighborhood to discuss some personal matters with a former girlfriend. While he drove around, S— C— waved at him and yelled something. Smith testified that he stopped and they had a short conversation.

Smith testified that S— C— knew him because he had lived in the neighborhood previously. During the conversation, Smith admitted that he asked if the prosecutrix would like to drive around and smoke marihuana.

He testified that they stopped in a parking lot of Haltom High School, smoked and talked. They left that location because of their fear of being observed and went behind the Chamber of Commerce building to

---

1. Actually, the case was set for oral argument on several occasions. Due to scheduling conflicts with attorneys, the case was reset until finally heard.

smoke a second "joint." Smith testified that he attempted to show S___ C___ how the Jeep worked on some trails behind the Chamber of Commerce. However, something was wrong with the four-wheel drive on the Jeep and as a result, he was forced to abandon that endeavor. He testified that he drove S___ C___ back to the area where he had picked her up and she requested to be left off close to her home.

Smith testified that S___ C___ asked him to come back later and pick her and a friend up to drive around and "party." He declined because he had to go out of town the next day, but told her he would see her in a few days. Smith testified that his refusal seemed to upset S___ C___.

Smith also testified that the Jeep Cherokee was a demonstrator owned by his employer, a local car dealer. He further testified that he had permission to drive the vehicle, and was planning a trip to El Paso. Smith was arrested during that trip near Van Horn, where he admitted that he had sold a spare tire off the vehicle to raise cash. On cross-examination, Smith admitted to previous convictions for credit card abuse and mail fraud in 1974, a burglary in 1978, and theft by check and possession of a controlled substance in 1981.

The indictment charged an offense of aggravated sexual abuse pursuant to TEX. PENAL CODE ANN. sec. 22.021 (Vernon Supp.1987). However, the court's charge submitted the lesser included offense of sexual assault, a second-degree felony under TEX.PENAL CODE ANN. sec. 22.011 (Vernon Supp.1987). As a result, we originally reformed the judgment to reflect the lesser included offense. We did not reverse the conviction because the charge on punishment was appropriate for a second-degree felony (unaggravated sexual abuse), enhanced by two previous felony convictions. TEX.CODE CRIM.PROC.ANN. art. 37.09 (Vernon 1981); *see also Choice v. State*, 628 S.W.2d 475, 477 (Tex.App.—Texarkana 1982, no pet.). In the instant case, the jury was authorized to assess any term of years, "not less than 25, nor more than 99, or life." This was the exact same range of punishment for any felony enhanced by two prior felony convictions. *See* TEX.PENAL CODE ANN. sec. 12.42(d) (Vernon Supp.1987). However, we withdrew that opinion and heard additional oral argument.

■ In his first point of error, Smith complains the evidence was not sufficient to sustain his conviction under section 22.011 of the Texas Penal Code.

In reviewing the sufficiency of the evidence to support a conviction based upon direct evidence, the evidence is viewed in the light most favorable to the verdict. *See Flournoy v. State*, 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App.1984); *Wilson v. State*, 654 S.W.2d 465, 471 (Tex. Crim.App.1983) (opinion on reh'g).

The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe believe that the defense evidence "outweighs" the State's evidence. *See Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied*, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). If there is evidence which establishes guilt beyond a reasonable doubt, and if the trier of fact believes that evidence, we cannot in a position to reverse the judgment on sufficiency of the evidence grounds. *See id.*

The elements of section 22.011 are as follows:

1. The accused intentionally or knowingly caused the penetration of the vagina of the prosecutrix by inserting his penis.

2. That he did so by threatening to use force and violence.

3. That the prosecutrix believed that the accused had the present ability to execute such threats.

4. That such penetration was without the consent of prosecutrix.

5. That the prosecutrix was under the age of seventeen years and not the spouse of the accused.

In comparing the elements of the offense with the testimony, it is obvious there was ample testimony submitted to the trier of fact that would enable a jury to find Smith guilty of the offense. Specifically, S___ C___ testified that she was fourteen years old, not the spouse of the appellant, and that he penetrated her vagina with his penis. This testimony alone is adequate evidence to support the first and fifth elements of section 22.011. S___ C___ also testified that Smith threatened her by stating if she did not get in the car, she would be "dead." At the time he made the threat, he was holding a knife, covered by a shirt, to her ribs. He only put the knife down when he raped her. This evidence is sufficient to establish the threat. *Perez v. State,* 653 S.W.2d 878, 879 (Tex.App.—Corpus Christi 1983, pet. ref'd). S___ C___ also testified that she was scared and believed appellant would use the knife. This establishes her belief that Smith had the present ability to execute the threat. *Bunte v. State,* 679 S.W.2d 695, 697 (Tex. App.—San Antonio 1984, no pet.).

Smith contends the jury should not have believed the testimony of the prosecutrix because her testimony at the trial differed from the report to the police regarding the route taken to and from the scene of the offense; she never actually saw a knife; she was never threatened about the reporting of the rape; and the examining physician found no evidence of rape. Testimony reveals that S___ C___ may not have actually seen the knife, but she testified that Smith told her he had a knife and she could feel a knife pressed against her ribs.

Additionally, the physician did not testify to any physical evidence of the rape. However, it is important to note that S___ C___ testified to the rape and specifically testified that Smith did not ejaculate. As a result, the absence of semen in this case does not contradict S___ C___'s testimony.

There are some discrepancies in the description of the route taken to and from the scene of the offense. However, they are of no great consequence inasmuch as both Smith and the prosecutrix are consistent about where the trip began and ended.

As in all criminal cases, the jury is the sole judge of the credibility of the witnesses, and could accept or reject any part or all of the testimony of any witness. *Coe v. State,* 683 S.W.2d 431, 438 (Tex.Crim.App. 1984); *Allen v. State,* 658 S.W.2d 642, 647 (Tex.App.—Amarillo 1983, no pet.). Smith asserts that the conviction rests solely on the credibility of the complaining witness and that his proof at trial demonstrated total inconsistency between the prosecutrix's version of the facts and the truth. He directs our attention to a high school counselor who did testify that the prosecutrix was an emotionally disturbed young woman who had a large need for attention.

As a result, Smith urges us to adopt a different standard of review. Specifically, Smith proposes that when the State's case:

[R]elies solely upon the testimony of a complaining witness and the Defendant shows beyond a reasonable doubt that the complaining witness testimony is contrived a conviction cannot stand.

We decline to adopt such a rule. In the instant case, there is evidence that the prosecutrix's version of the facts was contrived. However, there was also evidence to support her version of the facts. The jury, as trier of the facts, had the opportunity to view all of the witnesses, and assess their credibility. Since we do not have the opportunity to actually view the witnesses and assess their credibility, it would be folly to adopt the rule Smith proposes.

We hold there was ample evidence placed before the jury in this case in which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). The first point of error is overruled.

■ In his second and third points of error, Smith complains the trial court erred

in suppressing evidence from Dr. Stephen Vinson, who performed the rape examination. Specifically, Smith complains that Vinson was not allowed to testify that the prosecutrix had gonorrhea on the date the rape exam was conducted and in not allowing Dr. Vinson to testify as to his opinion of whether a rape had occurred.

The trial court sustained the State's objection to questions to Dr. Vinson, inquiring whether S____ C____ had gonorrhea. The State objected on the grounds that section 22.065 of the Texas Penal Code provides that evidence of previous sexual conduct is inadmissible. TEX.PENAL CODE ANN. sec. 22.065 (Vernon 1985).

Smith asserts that the evidence of S____ C____'s gonorrhea on the date in question is material to the issue of whether the rape occurred. Section 22.065 provides that evidence of previous sexual conduct is admissible only if the judge finds that the evidence is material to the fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

Smith argues that his proof would demonstrate that he would have, out of necessity, contracted gonorrhea in the sexual encounter of which he was accused. Dr. Vinson was asked what the likelihood of a person having sex with a gonorrhea victim contracting gonorrhea would be. However, he was not permitted to answer because he was not proved to be an expert in the area of sexually transmitted diseases. Another witness was proved to be an expert in the area of sexually transmitted diseases. Lois Kantor, an employee of the State Department of Health and manager for the Sexually Transmitted Disease Control Program in Tarrant County, testified that the likelihood of a person contracting gonorrhea after having one sexual contact with a gonorrhea victim, would be about 20%.

Smith also attempted to prove that he had not been treated for gonorrhea and was not suffering from the disease at the time of trial. However, the only witness called in support of that contention was Curtis McLeroy, a nurse in the jail. He testified only that Smith had not requested treatment for gonorrhea and that no tests had been requested or performed to determine whether Smith had the disease.

Smith was not able to prove that the mere fact that the prosecutrix had gonorrhea would have resulted in the transmission of gonorrhea to anyone with whom she had sexual contact. As a result, we cannot say that the evidence of the prosecutrix's gonorrhea was material to the fact issue at the trial. *See Johnson v. State,* 651 S.W.2d 434, 437 (Tex.App.—Dallas 1983, no pet.).

■ Smith also complains that Dr. Vinson was not allowed to testify as to his opinion of whether S____ C____ was raped. Specifically, Smith's counsel asked Dr. Vinson the following question:

Okay. As a doctor, what was your opinion as to whether she had been raped or not?

The doctor was not allowed to answer because an immediate objection was sustained. No bill of exceptions was made regarding what the doctor's answer would have been. As a result, error was not preserved for appeal. *Passmore v. State,* 617 S.W.2d 682, 685 (Tex.Crim.App.1981).

Nonetheless, Smith was able to get a great deal into evidence through Dr. Vinson prior to the question objected to. Dr. Vinson testified that there were no bruises or lacerations on the prosecutrix's body. Additionally, there were no tears in the rectal or vaginal vault. No sperm was found in the vaginal vault and no other sign of intercourse was found.

The doctor could have properly been asked questions regarding whether the evidence he found was consistent with sexual intercourse or forced sexual intercourse. He also could have properly been asked if his physical examination revealed that the prosecutrix had had recent sexual intercourse. However, the question asked was whether the prosecutrix had been "raped."

This question called for an opinion on S___ C___'s credibility and as such, was properly sustained.

■ In his fourth point of error, Smith complains that the trial court erred in quashing the subpoena directed to Smith's parole officer, ordering the parole officer to produce parole records.

Smith acknowledges that the information requested falls within a statutory privilege. TEX.CODE CRIM.PROC.ANN. art. 42.12, sec. 27 (Vernon 1979). However, Smith argues that an exception to the privilege exists when the privilege is faced with fundamental principles of due process and fair administration of justice. *Texas Dept. of Corrections v. Dalehite,* 623 S.W.2d 420, 423 (Tex.Crim.App.1981). A presumption in favor of upholding the privilege against disclosure does exist; but, the presumption can be rebutted by a demonstration of the need and relevancy of the requested information. *Id.*

Smith contends that his monthly parole report for July and August of 1984 would show that he reported his license plate number as P56–094. He argues that his report to the parole board would support his own testimony that he had been assigned that license number in July of 1984, and would rebut any implication that he had switched plates in order to evade identification.

Elsewhere in the trial, Smith testified that he had been assigned the P56–094 license from the dealership in July. He further testified there was some confusion at the dealership regarding what license he was supposed to have and the P56–094 license was a replacement license plate for the demonstrator vehicle.

We do not find that the trial court abused its discretion in sustaining the objection on the grounds of the statutory privilege. The mere fact that Smith had reported the license plate earlier would not tend to prove that he was not attempting to avoid detection. Additionally, other evidence on the issue favorable to Smith was admitted.

■ In his fifth point of error, Smith argues that the trial court's instructions to the jury during the guilt/innocence stage of the trial constituted fundamental error. As noted above, the indictment charged Smith with aggravated sexual assault pursuant to TEX.PENAL CODE ANN. sec. 22.021 (Vernon Supp.1987). However, the court's charge to the jury charged only sexual assault.

Inasmuch as appellant did not object at trial to the error in the court's charge, we must next decide whether the error was so egregious and created such harm that appellant has not had a fair and impartial trial—in short, "egregious harm". *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim.App.1984) (opinion on reh'g); TEX. CODE CRIM.PROC.ANN. art. 36.19 (Vernon 1981).

In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza,* 686 S.W.2d at 171. The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Id.* at 174.

The trial court's error of instructing the jury on the law of sexual assault, while constantly referring to the offense as "aggravated sexual assault," did not cause "egregious harm." Contrary to Smith's contention, the mistake could not have confused the jury. The confusion in nomenclature between the jury verdict form and the instruction on the law was harmless. It was clearly not improper to submit the lesser included offense to the jury, in the absence of objection.

Additionally, the punishment for the differing offenses is the same when it is enhanced by two prior felony convictions. *See* TEX.PENAL CODE ANN. sec. 12.42(d) (Vernon Supp.1987). No possible confusion to the jury could exist. Therefore, pursuant to TEX.R.APP.P. 80(b), we must re-

form the judgment and sentence to reflect that Smith stands convicted of the offense of sexual assault of a child, having been twice before convicted of a felony offense.

We have found no reversible error in the trial court's proceedings. As a result, we reform the judgment and sentence of the trial court to reflect that Smith stands convicted of the offense of sexual assault of a child, having been twice before convicted of a felony offense.