**Rick ZUNIGA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–90–00593–CR.**

Court of Appeals of Texas,
San Antonio.

April 30, 1991.

John Wilson Rowland, San Antonio, for appellant.

Steven C. Hilbig and Daniel Thornberry, Crim. Dist. Attys., San Antonio, for appellee.

Before BUTTS, PEEPLES and GARCIA, JJ.

## OPINION

GARCIA, Justice.

A jury convicted appellant, Rick Zuniga, of aggravated sexual assault of a child and assessed a sixty-five year prison term. On appeal, appellant alleges five points of error: that the evidence was insufficient to sustain a conviction; that the evidence was insufficient to show that the offense was committed in Bexar County, Texas, as reflected in the indictment; that the trial court erred in admitting the testimony of the medical expert; that the trial court erred in admitting the testimony of the Department of Human Services (DHS) caseworker since she was acting under color of law; and that the caseworker offered opinion evidence against appellant. We overrule each point of error and affirm the judgment.

On January 29, 1989, complainant, a nine-year-old female child, was with her eight-year-old sister and appellant, her twenty-three-year old uncle, in her grandmother's home in San Antonio, Bexar County, Texas. According to the unimpeached testimony of complainant, appellant summoned her into her grandmother's bathroom, whereupon he forced her to undress and lie on the bathroom floor. He then undressed and remained on top of her, touching her sexual organ and mouth with his sexual organ. Appellant told complainant not to tell anyone about the incident; otherwise, she would be in serious trouble.

Shortly thereafter, complainant's school counselor received an anonymous phone call indicating that complainant might have

been the victim of child abuse. Complainant was referred to Dr. Nancy Kellogg, a medical expert in the field of child abuse and trauma, for an examination. Thereafter, a DHS employee and caseworker, Leticia Coronado, contacted complainant and appellant to review the claim of sexual abuse. Before any indictment or arrest, appellant voluntarily met with the caseworker for about two hours. He also expressed during the interview that complainant could not lie about the alleged sexual abuse; when asked if complainant was lying about the allegations against him, he indicated the negative by nodding his head horizontally. Later at trial, he denied that he told the caseworker that complainant could not have lied about this allegation and that he nodded in the negative when asked if complainant lied about the allegations against him. Complainant had been the victim of an earlier child abuse incident committed by her mother's boyfriend, a Mr. Guerra, and appellant claimed Mr. Guerra to be the person most likely responsible for the current allegation of sexual abuse.

■ In his first point of error, appellant contends that the evidence is insufficient to support a conviction for the offense of aggravated sexual assault of a child. We must, therefore, review the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The appellate court does not weigh the evidence or evaluate the credibility of the witnesses; the jury, as the trier of fact, resolves any conflicts in the evidence, evaluates the credibility of the witnesses, and determines the weight to be given any particular evidence. *Sharp v. State*, 707 S.W.2d 611 (Tex.Crim.App.1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988).

Complainant testified as to the events made the basis of the indictment. She testified that her uncle, appellant, accosted her in the bathroom of her grandmother's room. According to complainant's version of the facts, appellant removed her clothing, removed his clothing, and proceeded to get on top of her. His private part, which complainant referred to as his "front," touched her private part, which she referred to as her "front." She testified how he placed his "front" in her mouth. During the course of her testimony, the State's attorney asked complainant to identify the private parts of her body and that of a male's body by using two anatomically correct dolls entered as exhibits. She correctly distinguished the sexual organs of the male and female dolls. Complainant described the acts which occurred in the bathroom involving appellant's sexual organ and her sexual organ using the dolls.

The medical expert, Dr. Kellogg, testified that she examined the child after being referred to her by school authorities. Dr. Kellogg testified that complainant's hymen had been forcibly touched and that the examination revealed sexual assault. The Department of Human Services caseworker, Ms. Coronado, testified that she interviewed complainant and appellant before the police were involved in the case and that the appellant acknowledged by nodding his head in the negative when she asked if complainant was lying about the allegations against him. Appellant testified that he did not commit the crime and offered complainant's mother's boyfriend, Mr. Guerra, who had previously been found guilty of molesting or assaulting complainant, as the probable culprit in the matter.

■ Appellant was indicted on four different theories. However, at the conclusion of appellant's case, the trial court withdrew two theories and the State proceeded only on the two remaining theories—that appellant's sexual organ came in contact with complainant's sexual organ and appellant penetrated his sexual organ into the complainant's sexual organ. Proof of either theory will sustain a conviction for the offense. *Cook v. State*, 741 S.W.2d 928 (Tex.Crim.App.1986), *rev'd and vacated on other grounds*, 488 U.S. 807, 109 S.Ct. 39, 102 L.Ed.2d 19 (1988); *Richardson v. State*, 766 S.W.2d 538 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd). A

minor complainant need not testify in the terms of the statutory language, but may use unsophisticated language to describe the sexual assault, in a manner sufficient to sustain the conviction. *Clark v. State*, 558 S.W.2d 887 (Tex.Crim.App.1977). To hold otherwise would be to encourage those persons capable of such heinous crimes to prey upon innocent children with no recourse in the law. Thus, the focus of the review is whether the testimony is sufficient to prove the facts of the assault as alleged. *See id.* Anatomically correct dolls can be used to assist a minor complainant's version of the facts to convey the substance of her testimony. *Villalon v. State*, 791 S.W.2d 130 (Tex.Crim.App.1990).

█ In this case, we find that based on the basically unimpeached testimony of complainant, the medical testimony, and the evidence adduced by the use of the anatomically correct dolls, a rational trier of the facts could have found appellant guilty beyond a reasonable doubt. Both contact and penetration could have been rationally found beyond any reasonable doubt. Penetration, however slight, will sustain a sexual assault allegation. *Sherbert v. State*, 531 S.W.2d 636 (Tex.Crim.App.1976). We reject appellant's first point of error.

█ Next, appellant contends that the State failed to show by a preponderance of the evidence that the offense occurred in Bexar County, Texas, as reflected in the indictment. Appellant asserts that complainant did not state the venue of the offense in her testimony. The law imposes no requirement that the victim of a crime establish venue of the offense. *See* TEX. CODE CRIM.PROC.ANN. art. 13.17 (Vernon 1977). Under *Black v. State*, 645 S.W.2d 789 (Tex.Crim.App.1983), proof of venue may be direct or circumstantial. Thus, victims of violent crimes, especially young children, need not establish the venue of the offense when other evidence at trial establishes the site and location of the offense. In this case, the State elicited from the DHS caseworker that the offense occurred at complainant's grandmother's home located in Bexar County, Texas.

There was no conflicting evidence on this point, or any other evidence to suggest that the offense may have occurred in any other county. We reject appellant's second point of error.

█ Next, appellant asserts that the court should have disallowed the testimony of the medical expert, Dr. Kellogg, when she was asked the following question:

Q. [By the State] Based on your examination of [complainant], Dr. Kellogg, based upon your training, education, and experience, and based upon your examination of over 1,100 children who have been sexually abused, do you have an opinion as to whether or not intentional trauma had been inflicted upon the sexual organ of [complainant]?

Dr. Kellogg responded that "the history and physical examination were consistent with sexual assault."

Appellant objected to the inquiry, asserting that it was merely bolstering the evidence of complainant, that the inquiry invaded the purview of the jury, and that the medical expert would be offering an opinion based on hearsay which would not assist the jury regarding the issue to be determined. We note that appellant did not preserve most of these objections at trial, and thus, we do not have to review most of them on appeal. Appellant relies on *Holloway v. State*, 613 S.W.2d 497 (Tex. Crim.App.1981), to support his position. In *Holloway*, a capital murder case, the State's witness, a psychiatrist, testified during the punishment phase of the trial, that he opined the defendant would pose a continuing threat to society. " '[T]he practical test for receiving such [expert] opinion is: On the *subject in issue* can the jury receive any *appreciable aid* from the person offered?' " *Id.* (quoting 2 R. Ray, Law of Evidence § 1400 (Texas Practice 1980)). In this case, in determining whether the child exhibited characteristics of being sexually assaulted, the medical expert was clearly qualified to testify, and she did aid the jury from a medical standpoint on the nature and extent of sexual assault. Most importantly, in *Holloway*, the medical witness based his opinion on data and inter-

views with other parties, but did not examine or interview the defendant.[1] In our case, Dr. Kellogg examined complainant within seventy-two hours of the alleged offense. Her examination and experience could and did aid the jury because the jury could not have ascertained those facts on its own. Although we adhere to the holding in *Holloway*, the facts in our case make *Holloway* inapplicable.

The question and response were proper. *See Smith v. State*, 737 S.W.2d 910 (Tex. App.—Fort Worth 1987, pet. ref'd). The inquiry did not "invade the province of the jury." Rule 704 of the Texas Rules of Criminal Evidence provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." One of the ultimate issues in the case was whether a sexual assault had occurred. The inquiry and response were properly allowed notwithstanding that they might embrace the ultimate inquiry on whether the sexual assault had occurred. Appellant's third point of error is overruled.

▮ Next, appellant complains that the entire testimony of the DHS caseworker should have been disallowed because she was acting under color of law. In this case, appellant was interviewed by the caseworker before any police involvement with appellant, indictment, or arrest. Appellant cites no authority for his position. We follow *Wicker v. State*, 740 S.W.2d 779 (Tex.Crim.App.1985), *cert. denied*, 485 U.S. 938, 108 S.Ct. 1117, 99 L.Ed.2d 278 (1988), to overrule appellant's point of error. In *Wicker*, the caseworker interviewed the defendant prior to any arrest, and defendant was not found to be in custody. Thus, the protection of the Miranda rights were not applicable. We reject appellant's fourth point of error.

▮ Finally, appellant complains that the trial court erred in allowing the DHS caseworker to respond to the following question:

Q. [By the State] So when you point-blank ask this man [appellant], "Is [complainant] lying about these allegations," and you asked him that question and then he shakes his head in a horizontal manner, like I'm indicating right now, what did that indicate to you his response was?

Appellant's trial counsel objected to the inquiry. In his brief, appellant complains that the inquiry led to the improper bolstering of the credibility of complainant or the rendition of an opinion on the credibility of the complainant. Neither complaint was made at trial. Thus, those objections are not preserved for review. *Johnson v. State*, 803 S.W.2d 272 (Tex.Crim.App.1990); *Rezac v. State*, 782 S.W.2d 869 (Tex.Crim. App.1990). Appellant objected on the basis that the inquiry violated the rule controlling opinion testimony.[2] However, admissions of a party opponent are admissible. Tex.R.Crim.Evid. 801(e)(2). By nodding his head in a horizontal manner to indicate his response, appellant effectively admitted to Ms. Coronado that complainant was not lying about the allegations. We reject appellant's fifth and final point of error.

We affirm the jury verdict.

▮

---

1. "Moreover, psychiatric testimony based solely on hypothetical questions without the benefit of an examination of the defendant by the witness is constitutionally permissible." *Holloway v. State*, 691 S.W.2d 608, 616 (Tex.Crim.App.1984), *rev'd*, 475 U.S. 1105, 106 S.Ct. 1508, 89 L.Ed.2d 908 (1986), *on remand*, 780 S.W.2d 787 (Tex. Crim.App.1989).

2. Appellant's counsel objected at trial that under Rule 701 of the Texas Rules of Criminal Procedure this was improper opinion evidence. The rule governing opinion testimony by lay witnesses is Rule 701 of the Texas Rules of Criminal Evidence.