*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★  ★ ★ ★

# MEMORANDUM OPINION

No. 04-09-00227-CR

Jose C. **CASILLAS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CR-3029
Honorable Philip A. Kazen, Jr., Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Sandee Bryan Marion, Justice
                Steven C. Hilbig, Justice, concurring in the judgment only

Delivered and Filed: April 21, 2010

AFFIRMED

A jury convicted appellant Jose C. Casillas of two counts of aggravated sexual assault and two counts of indecency with a child. In two issues, Casillas argues his convictions should be reversed because of the erroneous admission of expert testimony and violations of his double jeopardy rights. We overrule both issues, and affirm the judgments of conviction.

## BACKGROUND

On the night of November 27, 2006, six-year-old Y.V. told her mother her genital area was hurting because Casillas, her grandmother's husband, had touched her there. Y.V. was then taken to the hospital and examined by a certified sexual assault nurse examiner, Cynthia Garcia. Y.V.'s allegation was reported to police, and Casillas was eventually indicted for multiple counts of aggravated sexual assault and indecency with a child.

At trial, Y.V. testified Casillas would touch her with his hand on her "bottom" or anus. According to Y.V., Casillas would put something that looked like jello inside her "back part" or anus with his fingers. Moreover, Y.V. said Casillas would take her clothes off and have sex with her. Y.V. also stated Casillas would lay on top of her with his clothes off and his private part would touch her "on the back" or anal area and would go inside. Y.V. then testified that Casillas's hand touched her genital area "down there in front." Additionally, Y.V. testified Casillas's private part touched her genital area "in the front" but did not go inside and just touched her on the outside. Y.V. further testified that Casillas's fingers would go inside her "front." Y.V. also recalled when she went to the hospital and told the nurse her genital area hurt because Casillas "put his fingers in there, in my private part."

Garcia testified she performed a sexual abuse examination on Y.V. on November 28, 2006, at around 4:00 a.m. After talking to Y.V.'s mother, Garcia obtained a history from Y.V., which consisted of Garcia talking to Y.V. about her claim that Casillas had touched her genital area and taking notes. After taking this history, Garcia examined Y.V.'s body. Because Y.V. told Garcia there was hand-genital contact, Garcia performed a visual examination of the child's genital and anal

areas. The findings from this examination were normal, meaning no cuts, tears, or bruises were present. Garcia also collected a urine sample from Y.V. Garcia noted Y.V.'s urine was hazy, rather than clear. Lab tests revealed Y.V. had a trace of blood in her urine and leukocytes, which are white blood cells that signify the presence of an infection or trauma. According to Garcia, additional lab tests revealed Y.V. did not have an infection. Garcia's report, which was admitted into evidence at trial, stated under the heading "diagnostic impression—normal examination findings."

Dr. Nancy Kellogg, a pediatrician and Garcia's supervisor, also testified at trial. Although Kellogg never examined Y.V. herself, she did review the history taken by Garcia, the records from the exam performed by Garcia, and the urine test results. Kellogg testified that, in the absence of an infection, blood and leukocytes in the urine were very unusual for a six-year-old and in all likelihood were indications of trauma or irritation. Kellogg testified that, based on her review of all of these records, she would give a different diagnostic impression than Garcia, and her diagnostic impression would be sexual abuse.

Finally, some of Y.V.'s family members testified about an incident that took place in 2005. Y.V.'s eleven-year-old brother testified that once when he and Y.V. were left in Casillas's care, he discovered Y.V. and Casillas alone in the bedroom with the door locked. When Y.V.'s brother knocked on the door, no one opened it. When Y.V.'s brother looked through a gap under the door, he saw Y.V. sitting on the floor putting on her underwear. When Y.V. finally came out of the room, she told her brother that Casillas had asked her to take off her clothes. According to Y.V.'s brother, Y.V. told their mother about the incident.

Y.V.'s mother testified Y.V. told her in 2005 that Casillas had asked her to remove her clothes. Y.V.'s mother confronted Casillas about Y.V.'s allegation, but Casillas denied any wrongdoing. At the time, Y.V.'s mother did not report the incident.

## EXPERT TESTIMONY

In his first issue, Casillas argues, among other things, that the trial court erred in admitting Kellogg's testimony because her testimony did not assist the jury and constituted a direct comment on the truthfulness of the complaining witness. Specifically, Casillas complains the trial court erred in admitting Kellogg's testimony about (1) her diagnostic impressions in this case, (2) studies about sexual penetration in children, and (3) her own qualifications as an expert. Casillas also argues his complaints are preserved for appellate review because the trial court impliedly ruled on them in a hearing outside the jury's presence. The State, on the other hand, argues Casillas failed to preserve these complaints because Casillas's trial objections differ from his appellate complaints. Additionally, the State argues that even if Casillas preserved his complaints for appellate review, we should overrule this issue because the trial court properly admitted Kellogg's testimony.

### 1. Preservation

To preserve error, a complaining party must make a timely and specific request, objection, or motion and obtain an express or implied ruling on that request, objection, or motion. *Lopez v. State*, 253 S.W.3d 680, 684 (Tex. Crim. App. 2008); TEX. R. APP. P. 33.1(a). Additionally, an objection must be made each time inadmissible evidence is offered unless the complaining party obtains a running objection or obtains a ruling on his complaint in a hearing outside the presence of the jury. *Lopez*, 253 S.W.3d at 684. Moreover, trial objections that differ from appellate complaints

preserve nothing for review. *Santellan v. State*, 939 S.W.2d 155, 171 (Tex. Crim. App. 1997). An objection stating one legal theory may not be used to support a different legal theory on appeal. *Camacho v. State*, 864 S.W.2d 524, 533 (Tex. Crim. App. 1993).

To determine if Casillas's complaints are preserved, we examine the record. The record shows that, before Kellogg testified and outside the jury's presence, Casillas objected to Kellogg's testimony, arguing it would amount to a direct comment on Y.V.'s truthfulness and contending the State was trying to "shore up" its case with an expert who had "no actual knowledge of the events, did not examine the child, did not prepare any of the medical records, just having reviewed what the SANE[1] examiner prepared." Casillas further argued Kellogg's testimony should be disallowed in light of the fact that Kellogg would "never talk about anything factually to do [with] this case." In making his objection, Casillas cited several cases, including *Salinas v. State*, 166 S.W.3d 368, 371 (Tex. App.—Fort Worth 2005, pet. ref'd) (holding expert's testimony diagnosing sexual abuse based solely on the complaining witness's self-reported history was an improper attempt to bolster the complaining witness's credibility and a direct comment on her truthfulness).

The trial court then asked the State if there was more underlying Kellogg's testimony than the history provided by Y.V., and whether Kellogg was merely going to testify that Y.V. was truthful. The State informed the trial court that in preparing to testify Kellogg reviewed not only the history provided by Y.V. and Garcia's examination report, but also the urine test results. The State also assured the trial court that it would not ask Kellogg whether she believed Y.V. was sexually assaulted by Casillas. After hearing argument from Casillas and the State, the trial court indicated

---

[1] An acronym for sexual assault nurse examiner.

the situation in this case was different from the situation presented in *Salinas* and it would allow

Kellogg's testimony. The trial court then stated,

| | |
|---|---|
| The Court: | All right. All right. *Then bring her on, and then we'll take any other objections on an as-needed basis.* Should we get the jury first? |
| Defense counsel: | *So I take it, Judge, at the very least the court is in agreement that the question along the lines of did Mr. Casillas commit the offense, based on what you've seen, that's plainly objectionable?* |
| The Court: | *Yes.* |

(emphasis added).

Thus, the record shows that at the hearing outside of the presence of the jury, Casillas

complained that Kellogg's testimony was inadmissible for several reasons. First, Casillas complained

Kellogg's testimony would not assist the jury because it amounted to a direct comment on Y.V.'s

truthfulness. Second, Casillas complained Kellogg's testimony was unreliable because she had not

personally examined Y.V. and had only reviewed the medical records in this case. We conclude the

trial court impliedly overruled these complaints by allowing Kellogg's testimony. *See Lopez*, 253

S.W.3d at 684 (holding trial judge made at least an implied ruling permitting the State to elicit

testimony). The record also shows the trial court required any other objections to be made during

Kellogg's testimony.

During Kellogg's direct examination, the following exchange took place:

| | |
|---|---|
| State: | And I guess it's fair to say that you do sexual assault examinations. If you did [Y.R.'s] examination and all of the findings that Cynthia recorded on there, what would your final finding have been under this examination? |

Kellogg:    Just under the examination only, or the whole—

State:    The whole thing.

Kellogg:    Well, this—the whole thing is the history, plus the exam, plus the test that we do. And overall, *my impression or my diagnosis would be sexual abuse based on all those components together.*

Defense counsel:    *Objection, Your Honor. The same objection I entered before we started this. And she's taking—she's making an opinion about the ultimate issue in the case with nothing—personal knowledge of nothing about the facts of this particular case. She can't say it's a normal finding and then say sexual abuse occurred. It's just illogical.*

The Court:    *I'll sustain the objection at this time. Rephrase your question.*

State:    Well, you—you reviewed Cynthia Garcia's sexual assault examination report, right? In preparation for your testimony today. And you're testifying as an expert in this area. And on her diagnostic impression, she indicated that there were normal examination findings. Would you have made a different diagnostic impression, based on your review of these records?

Kellogg:    Yes.

State:    And what would that diagnostic impression have been?

Defense counsel:    Again, Judge, *I'm going to have to object to her giving a diagnostic impression of a patient she never saw.*

The Court:    That objection's overruled.

State:    You can answer.

Kellogg:    *My diagnostic impression would be sexual abuse.*

State:    And can you tell the jury why that is?

Kellogg:    Basically, that's—that's based on her history that she gave to the sexual assault nurse examiner as it was documented, but

> it's also based on the urine test that I measured or that I mentioned, it had some blood and it had some what we call leukocytes in it, and that is an unusual finding in a young child, a child who's not yet an adolescent and not yet developing sexually. And it is a finding that is more common in the sexually abused children than it is in a normal child who has not been sexually abused. So all of those things together would add up to my diagnostic impression.

(emphasis added).

Thus, the record shows Casillas specifically objected to Kellogg's diagnostic impression testimony twice. First, Casillas objected by referring to his earlier objections made at the hearing outside the jury's presence and by articulating additional objections. This objection was sustained, and the prosecutor was told to rephrase her question. Later, Casillas objected to the testimony because Kellogg was providing an opinion about a patient she never examined. This objection is one of the complaints presented on appeal. Thus, we conclude Casillas's complaint that Kellogg's diagnostic impression testimony "did little to assist the jury [to] understand the evidence or determine the ultimate fact in issue, especially since she did not examine Y.V. and her diagnostic impressions were based on reviewing the SANE report and medical records" is preserved for our review.

At a later juncture in Kellogg's testimony, the following occurred:

State:    And, Dr. Kellogg, have you—are you aware of any studies that have dealt with the—I guess a normal examination of a—of a child and proof—external proof or other proof that has reinforced the issue that someone has been penetrated, even though they had normal findings?

Kellogg:    Yes.

| Defense counsel: | Judge, I'm going to object to the relevance on that. What happens in a periodical study, *does not help this jury decide what happened in this particular case*. It's very misleading to the jury and it's not relevant. |
|---|---|
| The Court: | Overruled. |

(emphasis added).

Thus, the record shows Casillas specifically objected to Kellogg's testimony about studies involving sexual penetration in children because it would not help the jury decide what happened in this case. The trial court overruled this objection. We conclude Casillas's complaint that Kellogg's testimony about studies involving sexual penetration in children "did not educate the jury about anything it could not have deduced on its own" is also preserved for our review.

Finally, the record shows no objections were made to Kellogg's testimony about her own qualifications, and therefore, this complaint is not preserved for our review.

### 2. Merits

We review the trial court's decision to admit or exclude scientific expert testimony for an abuse of discretion. *Reyes v. State*, 274 S.W.3d 724, 729 (Tex. App.—San Antonio 2008, pet. ref'd).

On appeal, Casillas argues, "Although Dr. Kellogg's testimony about the leukocytes in Y.V.'s urine was admissible medical testimony, the overwhelming bulk of her testimony dealt with normal medical exams, and added nothing to the child's testimony and her own self-reported history in the SANE report." Casillas essentially argues that because the jury was in possession of the same information as Kellogg—the history, the report prepared by the nurse examiner, and the urine test results—portions of Kellogg's testimony were inadmissible. Thus, according to Casillas, the jury could have fully understood the issues in this case without Kellogg's testimony.

As authority, Casillas cites *Salinas v. State*, where the appellate court held that expert testimony diagnosing sexual abuse based solely on the complaining witness's self-reported history was an impermissible attempt to bolster the complaining witness's credibility and a direct comment on her truthfulness. 166 S.W.3d at 371. As a result, the appellate court held the trial court abused its discretion in admitting the expert's testimony. *Id*. The present case, however, is distinguishable from *Salinas*. Here, Kellogg's testimony was not based solely on the complaining witness's self-reported history. Kellogg indicated her opinion testimony was based not only on Y.V.'s history as recorded by Garcia, but also on the sexual assault examination report prepared by Garcia and the urine test. Kellogg stated she reviewed the urine test showing Y.V. had some blood and leukocytes in her urine. According to Kellogg, blood and leukocytes in the urine were unusual for young children, but were more common in children who had been sexually abused. Kellogg further testified that she reviewed the sexual assault examination report prepared by Garcia, in which Garcia made normal examination findings. Kellogg testified that her diagnostic impression would differ from Garcia's, and that her diagnostic impression would be sexual abuse. We conclude the trial court could have reasonably determined that Kellogg's testimony regarding her diagnostic impression was not merely an impermissible attempt to bolster the credibility of the complaining witness, but would in fact assist the jury in understanding the evidence in this case.[2]

---

[2] Casillas also argues Kellogg's diagnostic impression testimony was inadmissible because she never personally examined Y.V. Although this complaint was made in the trial court, in his appellate brief Casillas provides no legal analysis and cites no authority to support this particular complaint. Accordingly, we need not address this complaint because it is inadequately briefed. *See* TEX. R. APP. P. 38.1(i) (requiring appellate briefs to contain clear and concise argument for the contentions made and appropriate citations to authorities).

As additional support for his arguments, Casillas cites *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006), and *Zuniga v. State*, 811 S.W.2d 177, 180 (Tex. App.—San Antonio 1991, no pet.). Casillas cites *Vela* for the proposition that Texas Rules of Evidence 401 and 402 render testimony admissible only if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. 209 S.W.3d at 131. Casillas cites *Zuniga* for the proposition that the practical test for admitting expert medical opinion is whether, on the subject at issue, the jury can obtain any appreciable aid from the witness offered. 811 S.W.3d at 180.

Here, Kellogg testified that physical signs of penetration were not always apparent in children who had been sexually abused by way of penetration. Kellogg stated a finger could penetrate a young girl's vagina without necessarily leaving any injury. First, Kellogg cited a study in which over eighty-five percent of young girls who had contracted sexually transmitted diseases had intact hymens and normal physical exams. Second, Kellogg stated a survey of thirty-six girls who were pregnant revealed that eighty-five percent of them had normal, intact hymens. Third, Kellogg testified that in situations where vaginal penetration resulted in bruises, redness, or lacerations, subsequent physical examinations often showed those injuries were completely healed a week or two later. Fourth, Kellogg stated that even in situations where perpetrators had confessed to penetration of children, the majority of those children had normal physical exams.

Whether Y.V. was penetrated by Casillas was at issue in the case. As the State argues, jurors might expect that a young child who was sexually abused by way of penetration would have some visible, physical injury. We conclude the trial court could have reasonably determined that Kellogg's

testimony that children who are sexually abused by way of penetration might not show any physical injuries was relevant and assisted the jury in understanding the evidence in this case.

We conclude the trial court did not abuse its discretion in admitting Kellogg's testimony and, therefore, overrule Casillas's first issue.

## DOUBLE JEOPARDY

The Fifth Amendment protection against double jeopardy includes protection from multiple punishments for the same offense. *Honeycutt v. State*, 82 S.W.2d 545, 547 (Tex. App.—San Antonio 2002, pet. ref'd). In his second issue, Casillas argues his right to be free from double jeopardy was violated when he was convicted of indecency with a child and aggravated sexual assault for the same acts. According to Casillas,

> [t]he two 2005 counts of the indictment alleged one specific incident and not separate sexual episodes, and the two 2006 counts of the indictment did the same thing. On either of the dates alleged, there was no discrete act of indecency with a child apart from the act of aggravated sexual assault on the same date.

In response, the State argues Casillas did not raise his double jeopardy complaint in the trial court, and therefore, this issue is not preserved for appellate review.

### 1. Preservation

Generally, a double jeopardy claim must be raised in the trial court to preserve the error for appellate review. *Honeycutt*, 82 S.W.3d at 547. There is an exception to this rule. A double jeopardy claim may be raised for the first time on appeal when (1) the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and (2) enforcement of usual rules of procedural default serves no legitimate state interest. *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). As to the first requirement, when a defendant is charged in the same indictment

with two counts, and assuming one count is a lesser-included offense of the other, the error is apparent on the face of the record. *Honeycutt*, 82 S.W.3d at 547. Indecency with a child is a lesser-included offense of aggravated sexual assault when both offenses are predicated on the same act. *Evans v. State*, 299 S.W.3d 138, 143 (Tex. Crim. App. 2009). As to the second requirement, when the two convictions are in the same court, on the same day, before the same judge, and are based on the same evidence, the enforcement of the usual rules of procedural default serves no legitimate state interest. *Honeycutt*, 82 S.W.3d at 547.

In *Beltran v. State*, the appellant was convicted of aggravated sexual assault and indecency with a child in the same trial and argued on appeal that he was subjected to double jeopardy when he was convicted of both charges. 30 S.W.3d 532, 533 n.1 (Tex. App.—San Antonio 2000, no pet.). There, we concluded the appellant was entitled to appellate review of his double jeopardy complaint even though the complaint was raised for the first time on appeal. *Id*. Like the appellant in *Beltran*, we conclude Casillas may raise his double jeopardy complaint for the first time on appeal. *See id*.

### 2. Merits

In the present case, the jury found Casillas guilty of count two of the indictment, which charged Casillas with aggravated sexual assault "on or about the 9th Day of December, 2005," by "intentionally and knowingly caus[ing] the anus of [Y.V.], a child who was younger than 14 years, to contact the sexual organ of [Casillas];" and count four of the indictment, which charged Casillas with indecency with a child "on or about the 9th Day of December, 2005," by "intentionally or knowingly engag[ing] in sexual contact with [Y.V.], a female child younger than seventeen (17) years and not the spouse of [Casillas], by touching part of the genitals of [Y.V.]." Additionally, the

jury found Casillas guilty of count seven of the indictment which charged Casillas with aggravated sexual assault "on or about the 25th Day of November, 2006," by "intentionally and knowingly caus[ing] the penetration of the sexual organ of [Y.V.], a child who was younger than 14 years, by [Casillas's] finger;" and count eight of the indictment which charged Casillas with indecency with a child "on or about the 25th Day of November, 2006," by "intentionally and knowingly engag[ing] in sexual contact with Y.V., a female child younger than seventeen (17) years and not the spouse of [Casillas] by touching part of the genitals of [Y.V.]."

On appeal, Casillas contends the evidence shows his two 2005 convictions involved one incident, and his two 2006 convictions involved another incident. Casillas argues there is nothing in Y.V.'s testimony or the other evidence admitted at trial that would lead to the conclusion that the 2005 convictions involved more than one act and that the 2006 convictions involved more than one act. We disagree. The record shows there is evidence to support each conviction without a double jeopardy violation. The jury convicted Casillas of indecency with a child based upon Y.V.'s testimony that Casillas touched her genitals with both his hands and his sexual organ. The jury convicted Casillas of aggravated sexual assault based upon Y.V.'s testimony that Casillas touched her anus with his sexual organ and penetrated her sexual organ with his finger. Because the record shows Casillas's convictions for indecency with a child were not based on the same acts underlying his convictions for aggravated sexual assault of a child, we hold there was no violation of Casillas's double jeopardy rights. *See Beltran*, 30 S.W.3d at 534 (holding appellant's double jeopardy complaint was without merit when evidence existed showing the appellant committed more than one sexual offense). We, therefore, overrule Casillas's second issue.

## CONCLUSION

Having overruled both of Casillas's issues, the judgments of the trial court are affirmed.

Karen Angelini, Justice

DO NOT PUBLISH