

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00829-CR

Jesus **MONSIVAIS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CR1685
Honorable Frank J. Castro, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:        Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice
                Irene Rios, Justice

Delivered and Filed: June 30, 2021

AFFIRMED

Appellant Jesus Monsivais appeals his convictions for aggravated sexual assault of a child and indecency with a child by contact. In three issues, Monsivais argues (1) the trial court erred by denying his motion for new trial based on newly discovered evidence, (2) the evidence is insufficient to support his convictions, and (3) the trial court erred by overruling his objection to testimony regarding a polygraph test. We affirm.

### BACKGROUND

Monsivais was the boyfriend of the complainant's oldest sister, Carrie. When the complainant—Amy—was six, Monsivais lived with Carrie and Amy's grandmother.[1] Amy would frequently visit Grandmother and spend time with Monsivais. At some point, Carrie and Monsivais ended their relationship and Monsivais moved out of Grandmother's house. When Amy was eight, she told her mother that Monsivais—while he was living at Grandmother's house—would make her touch his "private part" and had "sucked" her vagina.[2] Mother subsequently filed a police report and Detective Virginia Garcia, with the San Antonio Police Department ("SAPD"), investigated the allegations.

Following the investigation, the State charged Monsivais in a three-count indictment with one count of aggravated sexual assault of a child and two counts of indecency with a child by contact. At trial, the State presented testimony from Amy; Mother; Grandmother; Officer Annie Mendez, the officer who took the initial report; Dionisia Hernandez, a volunteer with ChildSafe; and Annette Santos, the SANE[3] nurse. Monsivais presented Detective Garcia as his sole defense witness.

The jury found Monsivais guilty of aggravated sexual assault of a child and one count of indecency with a child by contact. The jury found Monsivais not guilty of the second count of indecency with a child by contact. Following the jury's recommendation, the trial court assessed punishment at twenty years' imprisonment for aggravated sexual assault of a child and two years' imprisonment for indecency with a child by contact to be served concurrently. Monsivais filed an

---

[1] We refer to the child complainant with the pseudonym "Amy," to her sister with the pseudonym "Carrie," and to their grandmother as "Grandmother."
[2] We refer to Amy's Mother as "Mother."
[3] Sexual Assault Nurse Examination

untimely amended motion for new trial based on newly discovered evidence that was overruled by operation of law, and this appeal followed.

## MOTION FOR NEW TRIAL

In his first issue, Monsivais argues the trial court abused its discretion by allowing his amended motion for new trial to be denied by operation of law.[4] Monsivais argues he is entitled to a new trial based on newly discovered evidence. The State argues the trial court did not abuse its discretion because the amended motion—which contains the newly discovered evidence ground—was untimely. The State also argues Monsivais has failed to satisfy the test for a new trial based on newly discovered evidence.

*Standard of Review*

We review a trial court's denial of a motion for new trial under an abuse of discretion standard. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). "We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable." *Id.* "A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling." *Id.*

*Applicable Law and Analysis*

A defendant may file a motion for new trial no later than thirty days after the trial court imposes the defendant's sentence in open court. TEX. R. APP. P. 21.4(a). The defendant may file one or more amended motions for new trial, without leave of court, so long as the amended motions are filed within thirty days after the date when the trial court imposes sentence in open court and the trial court has not overruled any preceding motion for new trial. TEX. R. APP. P. 21.4(b). Rule 21.4(b) "prohibit[s] a defendant from filing an amended motion for new trial after the thirty-day

---

[4] A motion for new trial is denied by operation of law if the trial court does not rule on it within seventy-five days after imposing or suspending sentence in open court. TEX. R. APP. P. 21.8.

period prescribed[.]" *State v. Moore*, 225 S.W.3d 556, 558 (Tex. Crim. App. 2007). However, "this prohibition does not . . . deprive the trial court of the authority to rule on a tardy amendment to a timely motion for new trial . . . at any time within the seventy-five days for ruling on a motion for new trial" when there is no objection from the State. *Id.* Thus, a trial court *may*—but is not required to—rule on an untimely amended motion for new trial absent an objection from the State so long as the trial court has not already denied a preceding motion for new trial. *Id.*; *see also* TEX. R. APP. P. 21.4(b).

Here, the trial court imposed Monsivais's sentence in open court on October 23, 2019. Therefore, to be timely, Monsivais was required to file his motion for new trial, and any amended motions, no later than November 22, 2019. Monsivais timely filed his original motion for new trial on November 20, 2019. However, Monsivais did not file his amended motion for new trial, which asserted the newly discovered evidence ground for the first time, until November 25, 2019.[5] As such, Monsivais's amended motion for new trial was untimely. While the trial court could have considered the newly raised grounds in the amended motion, absent an objection from the State, it was not required to do so. *Cf. Moore*, 225 S.W.3d at 570 (holding a trial court may rule on an untimely amended motion for new trial absent objection from the State); *see also Martinez v. State*, No. 04-17-00605-CR, 2018 WL 4603924, at *4 (Tex. App.—San Antonio Sept. 26, 2018, no pet.) (mem. op., not designated for publication) ("[A]lthough case law indicates a trial court *may* rule on an untimely amended motion for new trial absent the State's objection, we have found no authority indicating that a trial court *must* do so."). Because the trial court was not required to consider the newly discovered evidence ground raised in Monsivais's untimely amended motion

---

[5] The amended motion for new trial was not accepted by the Bexar County District Clerk's office until November 26, 2019, but it appears that it was actually filed on November 25, 2019.

for new trial, the trial court did not abuse its discretion when it allowed the amended motion to be overruled by operation of law.[6]

Moreover, on the merits, Monsivais is not entitled to a new trial based on newly discovered evidence. "A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." TEX. CODE CRIM. PROC. ANN. art. 40.001. "To obtain relief under this provision, the defendant must satisfy the following four-prong test: (1) the newly discovered evidence was unknown or unavailable to the defendant at the time of trial; (2) the defendant's failure to discover or obtain the new evidence was not due to the defendant's lack of due diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result in a new trial." *State v. Arizmendi*, 519 S.W.3d 143, 149 (Tex. Crim. App. 2017).

After sentencing, Monsivais hired an investigator who interviewed Carrie. For the newly discovered evidence, Monsivais points us to the investigator's affidavit attesting Carrie told the investigator that Amy "wasn't alone with anyone [while Monsivais was living with Grandmother] and [Amy] was with their mom most of the time." However, the affidavit also states: "[Carrie] does not know what happened to [Amy] while at [Grandmother's] house [because] there were times [Carrie] was not at [Grandmother's house] when [Amy] was there."

Monsivais claims Carrie's statements to the investigator are newly discovered evidence. Monsivais fails to explain why this "newly discovered evidence" was unavailable to him at the time of trial. Monsivais argues these statements were not made available to him during his review of the State's file because Carrie was not interviewed prior to trial by detectives, officers, or counsel. However, Monsivais does not give any reason why he did not have Carrie interviewed

---

[6] Monsivais does not argue he is entitled to a new trial based on any of the grounds asserted in his original motion for new trial, so we do not address those grounds here.

prior to trial or call her as a witness at trial. In fact, Monsivais concedes in his brief that Carrie "was uniquely positioned to be a witness in this case" but chose not to call her to testify in his defense. Thus, if the statements were unavailable at the time of trial, it was only because Monsivais did not exercise due diligence to discover or obtain the evidence. *See Shafer v. State*, 82 S.W.3d 553, 556 (Tex. App.—San Antonio 2002, pet. ref'd) ("It was the defendant's duty to seek out and interview any material witnesses . . . ."). Monsivais hired an investigator to obtain the evidence post trial but does not give any reason why he could not have hired the investigator to obtain the exact same evidence before trial. *See id.* (holding a defendant who did not interview material witnesses before trial "did not exercise due diligence in trying to discover the evidence before trial").

Finally, Monsivais argues Carrie's statements would probably bring about a different result in a new trial because they show a lack of opportunity to commit the offenses. This argument is without merit because the affidavit states there were times that Carrie was not at Grandmother's house and Carrie could not attest to what happened when she was not there. Even if admissible, Carrie's statements likely would not have brought about a different result because the offenses occurred when Amy and Monsivais were alone in Monsivais's room at Grandmother's house and likely occurred when Carrie was not there. Therefore, Monsivais fails to satisfy the four-prong test that would entitle him to a new trial based on newly discovered evidence.

Accordingly, Monsivais's first issue is overruled.

## LEGAL SUFFICIENCY

In his second issue, Monsivais argues the evidence is legally insufficient to support his convictions for aggravated sexual assault of a child and indecency with a child by contact. Monsivais does not argue the evidence is insufficient as to any specific element of the offenses; instead, he argues the evidence is insufficient because Amy "was able to testify to very little detail

with[out] leading questions from the [S]tate." However, "[w]ith a child witness, . . . a trial court is given some leeway, and the rule against leading questions is relaxed somewhat." *Keller v. State*, 604 S.W.3d 214, 225 (Tex. App.—Dallas 2020, pet ref'd). Furthermore, a child victim in an aggravated sexual assault or an indecency with a child case "need not directly and explicitly testify as to contact or penetration with the same clarity and ability of an adult witness to prove these facts beyond a reasonable doubt." *Prestiano v. State*, 581 S.W.3d 935, 941 (Tex. App.—Houston [1st Dist.] 2019, pet ref'd). The uncorroborated testimony of the child victim may be sufficient, standing alone, to support a conviction. *Id.*

*Standard of Review*

When reviewing the sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018) (emphasis omitted). Under this standard, "we defer to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (quotations omitted). "Furthermore, the trier of fact may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence." *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014).

*Aggravated Sexual Assault*

The first count of the indictment charged Monsivais with aggravated sexual assault and states: "on or about the 30th Day of May, 2016, JESUS MONSIVAIS, hereinafter referred to as defendant, did intentionally and knowingly cause the SEXUAL ORGAN of [Amy], a child who was younger than 14 years, to CONTACT the MOUTH of THE DEFENDANT[.]"

A person commits aggravated sexual assault if he "causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor" and "the victim is younger than 14 years of age, regardless of whether the person knows the age of the victim at the time of the offense[.]" TEX. PENAL CODE ANN. § 22.021 (a)(1)(B)(iii), (a)(2)(B). "The testimony of a child victim alone is sufficient to satisfy each element of the charged offense and support a conviction for aggravated sexual assault or indecency with a child." *Tucker v. State*, 456 S.W.3d 194, 208 (Tex. App.—San Antonio 2014, pet. ref'd). "Also, child victims of sexual crimes are afforded great latitude when testifying and they are not expected to testify with the same clarity and ability as is expected of a mature and capable adult." *Id.* (quotations and alteration omitted); *see also Zuniga v. State*, 811 S.W.2d 177, 179–80 (Tex. App.—San Antonio 1991, no pet.) ("A minor complainant need not testify in the terms of the statutory language, but may use unsophisticated language to describe the sexual assault, in a manner sufficient to sustain the conviction."). "To hold otherwise would be to encourage those persons capable of such heinous crimes to prey upon innocent children with no recourse in the law." *Zuniga*, 811 S.W.2d at 180.

Here, it was the State's burden to prove beyond a reasonable doubt that Monsivais contacted Amy's genitals with his mouth when she was younger than fourteen years old. Mother, as the outcry witness, testified that Amy told her Monsivais had "sucked" Amy's "private" and Monsivais forced Amy to touch his penis. Amy testified that one day in Monsivais's room at Grandmother's house, Monsivais pulled off her shorts, got on his knees, and put his head between her legs. Amy testified Monsivais "sucked" her "private part." When asked by the State, Amy clarified that a "private" is used for going to the bathroom. Amy stated it felt "weird" and "nasty" and she did not like it. Amy further stated she was afraid and felt disgusting while Monsivais was "sucking" her "private." When asked why she did not tell anyone about the incident sooner, Amy testified that Monsivais told her not to tell anyone. Amy testified she was six when the sexual

- 8 -

assault occurred. Annette Santos, the SANE nurse, testified that she interviewed Amy during the sexual assault nurse examination and was "able to determine that [Monsivais's] mouth went onto [Amy's] vagina."

While Amy testified she could not remember or did not know some of the answers to questions asked by the State and defense counsel, she did testify to each of the elements for aggravated sexual assault. *See Tucker*, 456 S.W.3d at 208 (holding child victims are given great latitude when testifying and are not expected to testify in as great of detail or with the same clarity as adults). Further, it was the jury's purview to assess Amy's credibility and determine the weight of the evidence. Viewing the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found beyond a reasonable doubt that Monsivais sexually assaulted Amy and that she was less than fourteen years old when the assault occurred.

*Indecency With a Child by Contact*

The second count of the indictment charged Monsivais with indecency with a child by contact and states: "on or about the 30th Day of June 2016, JESUS MONSIVAIS, hereinafter referred to as defendant, did intentionally and knowingly engage in sexual contact with [Amy], A FEMALE CHILD YOUNGER THAN SEVENTEEN (17) YEARS by causing [Amy] to touch the PART OF THE GENITALS of THE DEFENDANT with the intent to arouse or gratify the sexual desire of any person[.]"

A person commits indecency with a child by contact "if, with a child younger than 17 years of age, . . . the person[] engages in sexual contact with the child or causes the child to engage in sexual contact[.]" TEX. PENAL CODE ANN. § 21.11(a)(1). "Sexual contact" means "any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person" if "committed with the intent to arouse or gratify the sexual desire of any person[.]" *Id.* § 21.11(c)(2). In the context of indecency with a child, the factfinder

can infer intent to arouse or gratify sexual desire from the defendant's conduct, remarks, and all the surrounding circumstances. *Keller*, 604 S.W.3d at 226 (citing *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981)). As mentioned above, "[t]he testimony of a child victim alone is sufficient to . . . support a conviction for . . . indecency with a child." *Tucker*, 456 S.W.3d at 208.

Here, the State had the burden to prove beyond a reasonable doubt that Monsivais's genitals contacted Amy's hands with the intent to arouse or gratify his sexual desires and Amy was less than seventeen years old when this occurred. As mentioned above, Mother testified Amy told her that Monsivais made her grab his penis. Amy testified Monsivais would use his hand to make her touch his "private part" when they were alone in his room at Grandmother's house. Amy also stated that if she "wanted to stop he would hold [her] hand harder." Amy further testified there was one time that Monsivais put red candies on his "private part." The State asked Amy what Monsivais would do when he put the candies on his "private," and Amy replied she did not want to say because she was embarrassed. Eventually Amy testified Monsivais would try to make her "suck it." When asked by the State, Amy explained Monsivais's "private" was the color of his skin. Amy testified there was also a time where "white stuff" came out of his "private" and Monsivais told her it was slime and tried to make her touch it. When asked whether she touched the "white stuff," Amy replied she didn't remember. Again, Amy testified she was six years old when this occurred. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Monsivais committed the offense of indecency with a child by contact.

Monsivais's second issue is overruled.

**POLYGRAPH EVIDENCE**

In his third issue, Monsivais argues the trial court abused its discretion by overruling his objection to evidence about "the motive for not submitting to a polygraph" test.[7]

"We review a trial court's decision to admit evidence over objection under an abuse-of-discretion standard and will not reverse that decision absent a clear abuse of discretion." *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). "The trial court abuses its discretion when the decision lies outside the zone of reasonable disagreement." *Id*.

Generally, references to a polygraph test, or its results, are inadmissible in a criminal trial. *Martinez v. State*, 272 S.W.3d 615, 626 (Tex. Crim App. 2008). However, a limited exception to this rule exists. Polygraph evidence may be properly admitted when one party "open[s] the door" for the other party to introduce polygraph evidence. *Lucas v. State*, 479 S.W.2d 314, 315 (Tex. Crim. App. 1972). In *Lucas*, the defendant testified that he took a polygraph test and that the test results showed he did not commit the offense charged. *Id*. Thereafter, the trial court allowed the State to counter the defendant's testimony with evidence indicating the defendant did not pass the polygraph test. *Id*. On appeal, the defendant complained it was error for the trial court to admit the State's evidence about him failing to pass the polygraph exam. *Id*. The Texas Court of Criminal Appeals concluded that "under the particular facts of this case the [defendant] 'opened the door' for the [S]tate to introduce the complained of testimony" and, therefore, the trial court did not err by admitting the State's polygraph evidence. *Id*.

This case falls under the exception recognized in *Lucas*. *See id*. As even Monsivais acknowledges in his appellate briefing, he opened the door to the admission of polygraph evidence

---

[7] To the extent Monsivais's third issue incorporates additional complaints about other alleged errors, it is multifarious. We are not required to address multifarious issues and we decline to address Monsivais's additional complaints. *See Jenkins v. State*, 493 S.W.3d 583, 605 n.50, 614 n.85 (Tex. Crim. App. 2016).

during his case-in-chief. Defense counsel called Detective Garcia, the detective who interviewed Monsivais about the allegations before any charges were filed, to testify as a defense witness. During defense counsel's direct examination, Detective Garcia testified that Monsivais had agreed to take a polygraph test and that she had arranged for him to be contacted by another officer to schedule the polygraph test. Detective Garcia confirmed Monsivais had given her two different phone numbers to contact him and the officer who tried to schedule the polygraph test only called one of the numbers. Detective Garcia also testified there was no further follow up by SAPD to schedule the polygraph test. On cross-examination, the State attempted to elicit additional testimony from Detective Garcia about why the polygraph test did not occur.

On appeal, Monsivais complains about parts of the State's cross-examination of Detective Garcia. Specifically, Monsivais directs our attention to the following exchange:

| | |
|---|---|
| State: | So based on your training and experience, why do people typically not go in for a polygraph? |
| Defense: | All right. Judge, I am going to have to object. That calls for speculation. |
| Court: | Response? |
| State: | Judge, he's opened the door on it. I feel it's a relevant answer for her to— |
| Court: | Sustained, regarding other people. |
| Defense: | Thank you. |

Here, the record shows the trial court sustained Monsivais's "speculation" objection to the State's question about why people "typically" do not take a polygraph and Detective Garcia did not answer the question. "To preserve error for review a defendant must receive an adverse ruling on his objection." *Ramirez v. State*, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991). In other words, the trial court "must have overruled the objection." *Ethington v. State*, 819 S.W.2d 854, 858 (Tex.

Crim. App. 1991). Because the trial court sustained Monsivais's objection, Monsivais did not obtain an adverse ruling and nothing is preserved for our review.[8] *See Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007) (noting the "only essential requirement" for error preservation "is a timely, specific request that is refused by the trial court"); *Nethery v. State*, 692 S.W.2d 686, 701 (Tex. Crim. App. 1985) (concluding the defendant failed to preserve his complaint for appellate review when the trial court sustained his objection to certain testimony, and he did not ask the trial court to instruct the jury to disregard or move for a mistrial).

Monsivais also directs our attention to the following exchange:

| State: | Well, Detective [Garcia], do you have a reason to believe why the defendant didn't go in for a polygraph? |
|---|---|
| Defense: | Judge, I'm going to have to object. Her opinion— |
| Court: | She can answer if she knows. |
| Defense: | I'm sorry, I couldn't hear you, Judge. |
| Court: | She can answer if she—based on her knowledge or— |
| Garcia: | I—usually it's because they're afraid of the results. That's why I believe they don't come in. In this particular case, I mean, I don't know why he didn't come in, but usually they're afraid of what the results are going to display. |

Here, the record shows that Monsivais did not state specifically the basis for his objection. Generally, to preserve a complaint for review, the record must show that the complaint was made to the trial court by a timely and specific request, objection, or motion, and that the trial court ruled on the request, objection, or motion. TEX. R. APP. P. 33.1(a). "A defendant must make a timely objection in order to preserve an error in the admission of evidence." *Dinkins v. State*, 894 S.W.2d

---

[8] It is proper for us to address error preservation even when, as here, the parties do not. *See Darcy v. State*, 488 S.W.3d 325, 327–28 (Tex. Crim. App. 2016) (recognizing preservation of error is a systemic requirement, and a first-tier appellate court may not reverse a judgment without first addressing error preservation, regardless of whether it is raised by the parties).

330, 355 (Tex. Crim. App. 1995). "The defense must have stated specifically the basis for the objection unless the particular ground was apparent from the context." *Ethington*, 819 S.W.2d at 858.

Monsivais's briefing asserts the basis for the objection was that the question "call[ed] for speculation." Assuming that the basis for the objection was speculation and that this was apparent from the context, we see no abuse of discretion. The record indicates the question did not call for speculation. While not a model of clarity, the question in effect asked Detective Garcia what she knew about why Monsivais did not take a polygraph test. After Monsivais objected, the trial court stated Detective Garcia could answer the question "if she kn[ew]" and "based on her knowledge." Thus, the trial court allowed Detective Garcia to testify, to the extent she knew, about why Monsivais did not take a polygraph test.[9] We conclude the trial court did not abuse its discretion by overruling a speculation objection.

Finally, part of Detective Garcia's answer—that she believed people "don't come in" to take a polygraph test because "usually they are afraid of what the results are going to display"—was not responsive to the State's question. But Monsivais did not object to this part of Detective Garcia's answer, nor did he request an instruction to disregard it. To the extent Monsivais complains about Detective Garcia's answer to this question, we conclude his complaint is not preserved for our review. *See Smith v. State*, 763 S.W.2d 836, 841 (Tex. App.—Dallas 1988, pet. ref'd) (recognizing when no objection is lodged to a nonresponsive answer, "the inadmissibility of the evidence is thereby waived, and the admission of the evidence is proper"); *see also* TEX. R. EVID. 103(a)(1)(A) (stating a party must timely object or move to strike to preserve a claim of error in the admission of evidence).

---

[9] As part of her answer, Detective Garcia testified that she did not know why Monsivais did not come in to take a polygraph test.

Accordingly, Monsivais's third issue is overruled.

## CONCLUSION

We affirm the judgment of the trial court.

Irene Rios, Justice

Do not publish